UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

AUG 2 1 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN )
APPLICATION OF THE UNITED )
STATES OF AMERICA FOR A )
WARRANT TO OBTAIN RECORDS, )
LOCATION INFORMATION, )     No. 4:15 MJ 1098 JMB
INCLUDING PRECISION LOCATION )
INFORMATION, CELL SITE )     **FILED UNDER SEAL**
INFORMATION, AND OTHER )
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
314-337-3971. )

## AFFIDAVIT

Mark Wynn, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), duly appointed according to law and acting as such.

### Introduction

I, Mark A. Wynn, being duly sworn, state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed for over ten years. I am currently assigned to the St. Louis ATF Field Office and charged with investigating violations of the Federal arson, explosives and firearms laws. I have successfully completed the Criminal Investigator Training Program (CITP) and the ATF National Academy Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the

location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the Aio Wireless (AT&T) cellular telephone bearing number **314-337-3971** (hereinafter the "**subject cellular telephone**") has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 18, United States Code, Section 1512 (the "subject offense"), by Dwane TAYLOR and Kassandra ROBINSON.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information from a cell site simulator, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offense as well as to the potential identification of other individual likely engaged in the commission of the subject offense and related crimes.

### Investigation and Probable Cause

On July 16, 2015, a federal grand jury returned a three-count indictment against Dwane TAYLOR for his involvement in the December 16, 2014, murder of Erin Davis and the January 16, 2015, murder of Juanita Davis. Specifically, TAYLOR has been charged with one count of conspiracy to possess with the intent to distribute heroin and two counts of possession of a firearm in furtherance of drug trafficking resulting in the death of Erin Davis and Juniata Davis,

respectively, in case number 4:15 CR 335 CDP (DDN). On July 24, 2014, TAYLOR was arrested pursuant to a federal warrant and taken into custody. TAYLOR has been held by the United States Marshals Service at the Sainte Genevieve County Sheriff's Office Detention Center since the time of his arrest.

On July 27, 2015, the United States Attorney's Office was contacted by ROBINSON. Among other things, ROBINSON identified herself as TAYLOR's fiancé, requested information about the status of TAYLOR's pending case, and provided a contact number of 314-337-3971 (**subject cellular telephone**). When contacted by the United States Attorney's Office at **subject cellular telephone**, ROBINSON answered and positively identified herself. ROBINSON has visited TAYLOR at the Sainte Genevieve County Sheriff's Office Detention Center on multiple occasions. When doing so, ROBINSON is required to provide pertinent information to the facility, including a contact number. ROBINSON has identified herself as TAYLOR's "spouse" and repeatedly identified **subject cellular telephone** as her contact number.

The Sainte Genevieve County Sheriff's Office Detention Center also has a policy of reviewing incoming and outgoing inmate mail for contraband and/or other criminal activity. This policy is outlined in the facility's Inmate Handbook at Section 3.14.B. On or about August 20, 2015, a facility staff member processed outgoing mail drafted by TAYLOR and addressed to ROBINSON. Among other things, TAYLOR directs ROBINSON in the letter to contact a third party and request the third party to change prior statements the third party has previously provided to law enforcement officials regarding TAYLOR's criminal activities. TAYLOR provides ROBINSON with the third party's telephone number and an actual script to for ROBINSON to read to the third party during the telephone call. Stated another way, the letter directs

3

ROBINSON to tamper with a witness and obstruct justice on TAYLOR's behalf and at TAYLOR's direction.

Upon receipt of the letter, it is believed that ROBINSON will act in accordance with TAYLOR's request and utilize the **subject cellular telephone** to do so. Therefore, law enforcement officials seek this order to monitor ROBINSON's usage of **subject cellular telephone** to determine if, in fact, ROBINSON attempts to or actually does tamper with a third party witness and obstruct justice on TAYLOR's behalf and at TAYLOR's direction, in violation of, among other statutes, Title 18, United States Code, Section 1512. Likewise, should ROBINSON tamper with a witness and obstruct justice on TAYLOR's behalf and at TAYLOR's direction, the information obtained pursuant to this order will be direct evidence of an additional crime(s) committed by TAYLOR and ROBINSON. It is critical that the investigative team be able to locate and monitor the activity being conducted via **subject cellular telephone**, as well as the location from where the activity is occurring, thereby assisting in the identification of criminal activity and obtaining evidence of that same activity. Your affiant believes that the requested information would be a valuable asset in achieving the overall goals of the investigation.

### Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A. Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times

and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

  B. Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

  C. Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

  D. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an

5

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F. Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking

6

technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In addition to records and signaling information from cellular providers, it is also sometimes possible to locate and monitor the movements of a cellular device by directly monitoring signals from the device itself. Such monitoring is accomplished by using a specific form of pen register, which is referred to herein as a cell-site simulator. In particular, a cell-site simulator mimics, to a degree, the activities of a cell tower. Once the general location of the **subject cellular telephone** is identified (e.g., using cell site location records or E-911/precision location information), a cell-site simulator can be used in the vicinity of the **subject cellular telephone** to detect radio signals that are emitted automatically at the time the **subject cellular telephone** is turned on, and periodically thereafter as long as the phone remains on, regardless of whether a call is being made, to communicate with the cellular infrastructure, including cell towers. These signals contain identifying numbers for the telephone (*e.g.*, the telephone number and Electronic Serial Number ("ESN") or International Mobile Subscriber Identification ("IMSI") number). The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, can use these cell-site simulator techniques to attempt to identify the location from which the **subject cellular telephone** is operating. The techniques do not intercept any content of communications, but rather search for signals emitted by the **subject cellular telephone**, which are identified through its identifying numbers (which are already known to law enforcement through other means). The cell site simulator may cause a temporary disruption of services. Once the **subject cellular telephone's** signals are identified (typically, through the use

7

of a cell-site simulator, which can be used only when it is in the general proximity of the **subject cellular telephone**), the strength of the signal emitted by the **subject cellular telephone** can be analyzed to ascertain the general direction and location of the signal, which can assist in identifying the general location from which the **subject cellular telephone** is operating. After the location is determined, data not associated with the operation is deleted.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel Aio Wireless (AT&T), any telecommunication service providers reflected in Attachment 1 (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may also install and use its own pen register and trap-and-trace devices, including a cell-site simulator, in an effort to locate and monitor the movements of the **subject cellular telephone**.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative

techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

### Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to tamper with a witness and obstruct justice and the requested authorization would provide relevant evidence of the conspiracy. There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 18, United States Code, Section 1512.

21 AUG 2015
DATE

MARK WYNN
Special Agent
ATF

Sworn to and subscribed before me this 21st day of August, 2015.

JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri